That's correct, sir. Okay. Your Honor, we submitted a couple of days ago a notice of supplemental authority for Supurna's Pharmaceuticals v. Iancu, a recently decided case of this court. And we believe that the rationale of that case governs the rationale by which the court should apply to this case. In Supurna's Pharmaceuticals, the court found, this court found that the PTO cannot reduce PTA for the period in excess of the time during which the applicant failed to do so exceeds the clear and express statutory limits for PTA reduction. Would you agree that once a final office action issues from the agency, that that cuts off any further prosecution as a matter of right, that prosecution is now closed? Your Honor, prosecution is closed, but that's not to say that additional responses aren't allowed under Rule 116, for example. Amendments and arguments are permitted. Those responses under 116, they don't relieve you of the responsibility of filing a reply to the final office action to avoid abandonment of the case. Is that right? Well, we did file a reply to the final office action. No, no, I'm just asking you an understanding of 1.116, that there's a statement in that rule that says if you choose to file a 1.116 response, that's fine, you can do that, but it doesn't relieve you of your responsibility to timely file a reply to the final office action. And if all you do is a 1.116 submission and don't do anything else and don't hear anything else, your case will actually ultimately go abandoned for failing to file a 1.113 reply. Is that fair to say? That's absolutely correct, Your Honor. Okay. So 1.116 is more of an elective parallel track thing that you can try to do in a mother may I sense to persuade the examiner to allow your case, but it's not as a matter of right that you get an opportunity to be heard where the PTO must consider any and all arguments and evidence that you submit. Is that fair to say? I would not say that, Your Honor. Okay, where did what I said, where did I go wrong? Because it's not just a mother may I situation. 1.116 exists to provide an end to prosecution. You have to file an appeal or be, you know, notice of appeal or be allowed or file an RCE. But the PTO has made clear in 1.116 and also in the various, you know, post after final programs that the PTO has implemented that the PTO authorizes and indeed encourages after final practice. After final practice is a feature of probably a majority of cases before the PTO and, you know, the court's decision in this case will affect tens of thousands of cases. But in many ways, isn't that after final practice sort of a version of RCE practice? And once you file an RCE, it cuts off be delay. Is that right? Yes, Your Honor, but filing an RCE in this case would have defeated, would have been contrary to goals of compact prosecution, and it would have delayed final resolution of the case. And the question here, Your Honor, is not, you know, whether this is before final or after final. The question and the question in Sopranos is whether the applicant's conduct was, you know, reasonably targeted towards achieving resolution of the case, and we submit that it was. Your initial response, your July response. Yes, sir. That response, as I understand it, you wanted to persist in having a back and forth with the examiner over the merits of the examiner's 103 rejection. Is that fair to say? With regard to 103, we maintain that position. And then finally in your August submission, you finally gave up. You said, okay, I give up. I'm going to cancel all the claims that are subject to the 103 rejection. I'm going to cancel all those claims, and I'm going to follow your direction and suggestions on how to fix all the technical problems with the other claims. And so now everything I've done is according to your wishes so that the case is in condition for allowance. Is that fair to say? Yes, Your Honor. And if I could further say, there was a telephone conversation on the day of the second response, and had the examiner simply, you know, entered the amendments that were provided in the second response by examiner's amendment, then there would not have been a further paper by the applicant. We wouldn't have been charged with this delay. Well, yes, you would have because the first response, which goes back to July, for whatever reason you chose to continue to fight the merits of the 103 rejection. At that point in time, in July, I think it's 2013, you could have easily said, all right, I have a final rejection on my hands here, and I want to just get this thing issued. So I'm going to do every single thing that's going to make this examiner happy, according to what the examiner said in the final rejection, so that I can put this case in condition for allowance. And by doing that, I will have clearly made every reasonable effort to conclude prosecution. But instead, you wanted to keep fighting the 103. You wanted to get the examiner's attention to have another opportunity to be heard after final, after prosecution had been closed, to argue the merits of the 103, and the examiner said, no, because prosecution's been closed. You need to do something to get rid of the rejection other than argument. You have to either cancel the claims or do something else, and you didn't do that, and that's what the point of the advisory action was. Your Honor, we did make some arguments, and some arguments were accepted. With respect to the 103? We went from having 15 claims rejected and seven allowable to, after the advisory action, 17 claims allowable and five rejected. I'll agree with you that you, in part, gave in and made concessions to the examiner to help align your case with the examiner's point of view, but you didn't do it all the way. With the 103 rejection, you wanted to keep fighting. That would have been why you do an RCE. You want to keep arguing the merits of a rejection. That's what you do with an RCE. Instead, you didn't file an RCE. You did this after final response, and that, in essence, was a choice by you to not conclude the prosecution right away in light of the context of the final rejection. That was you trying to keep going, pressing forward, and hang on to a given take with the examiner, which you don't have any right to do after prosecution has formally been closed by the final rejection. Your Honor, I would say there is, as I said, after final prosecution is allowed. It doesn't obviate. It's highly regulated, though, right? What? It's highly regulated. It's tightly scripted. There are just a few little things you can do in the context of after final as opposed to after a non-final office action. Is that fair to say? I would say you can do anything after final that you can do before a non-final. The question is whether you have as a matter of right that the examiner will consider it. I would say the examiner has more leeway with regard to not entering amendments or not considering arguments after final, but it doesn't mean the arguments can't be presented. The only thing that's different about after final practice is that come what may, the six months from final rejection, you know, statutory bar doesn't end, and you have to by that time file either a notice of appeal or an RCE or get the notice of allowance. That's true. You have to do that within the six months. But with regard to the arguments that you can make, you're permitted to make arguments. You're encouraged to make arguments. But you don't get as a matter of right to be heard on those arguments by the examiner. The examiner can choose to consider them or not consider them. That's not the PTO's policy. The PTO's policy is to encourage after final practice. That's why we have all these after final programs, PABRs, and so forth. That may be true, but maybe what that means is what they've tried to do for you is to create sort of like a mini RCE without having to pay for an RCE, but that doesn't necessarily mean you get relief under the patent term adjustment laws, that now you get to escape the costs under PTA for filing an RCE when you're doing something in substance that very much looks like an RCE. Well, Your Honor, if we had, let's say, filed, you know, instead of the first response, we simply filed an RCE, there is virtually no chance the case would have been resolved, as it was, within 21 days, and it would have simply extended prosecution and it may or may not have resulted in a shorter or longer patent term adjustment. What you filed in August, you could have filed it in July. Is that fair to say? Canceling all the claims subject to a 103. Your Honor, you could say about any response that doesn't result in allowance, you could have done something sooner. The fact is that the examiner's position also changed somewhat from the final rejection to the advisory action. That's why we went from having 15 claims rejected to 17 claims allowed. On the 103 rejection, you're saying the examiner moved its position between the advisory action and the final office action? The examiner withdrew his objections on the basis of 112. I'm talking about the 103. Let me repeat my 103 question to you. Did the examiner alter its point of view as to the 103 between the advisory action it issued and the final office action it issued? No. The examiner did not. Okay, then. Now we're in the same place. No, we're in the place that the examiner accepted some arguments and rejected others, which is a common, typical situation. You're into your rebuttal, but could you just tell me what is your definition of what the word reply means in Rule 704B? In Rule 704B, the word reply means simply a reply, a response. It could be a one-sentence reply, and that would count as an adequate reply under the rule? It would have to be a reply that addressed the issues raised by the examiner. It would have to be a reply that was consistent with Rule 116 and consistent with responses to office actions under 35 U.S.C. 111 and other applicable rules. But it does not have to be—it does not have to result in allowance. The importation of the section in—the importation of the section 113C is not something that appears in the rule in 705, and if the PTO wanted to say that— Is it your view that any reply that complies with 1.111, regardless of whether it's a response to a final office action or a non-final office action, that should be adequate to fulfill the requirements of a reply under 704B? Yes, Your Honor. I would say an advisory action is a—you know, should have been construed as a notice, and a reply should have been construed in accordance with its ordinary meaning, and the importation of special meanings for after-final practice— I know, but I'm trying to get a feel for what is it that is your understanding of reply. And I can't tell if it's any reply or a 1.111 reply or something else. So— It has to be a bona fide reply that—and a bona fide effort under— we're talking here about what is reasonable in terms of trying to get allowance, reasonable efforts to conclude prosecution. So it has to be a reply which constitutes a reasonable effort to include prosecution, not necessarily a reply which does, in fact, conclude prosecution. That's what we mean by submission. Okay. I'll reserve the time for revising. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Assistant United States Attorney Andrew Hahn here on behalf of the Patent and Trademark Office. As this Court recognized just a few years ago in Gilead Sciences v. Lee, Congress expressly delegated authority to the PTO to prescribe regulations that would establish the circumstances that constitute a failure of an applicant to engage in reasonable efforts— I wondered if Chevron was going to be mentioned. —to conclude processing of— I'm just a government lawyer. Yes. And as— Are you going to talk about our two? Well, I can— No, don't. It's okay. I can, but this Court does not need to rely on our deference to affirm the district court's decision below, and that's because the regulations in 1.704 set forth illustrative examples of what constitutes a failure to engage in reasonable efforts. And among other things, 1.704 provides that applicant delay will be assessed when an applicant submits a noncompliant reply in response to an office action. The definition that— Wait a second. Are you talking about 704C7? I'm talking about Section 704B. Okay. Well, it doesn't say noncompliant reply. It just says reply. That's right. That's right, Your Honor. An applicant needs to file a reply within a certain period of time in response to any action. So now the question is, what does reply mean? Well, the word reply is defined in at least three other regulations, 1.111, 1.113, and 1.703, all of which are expressly cross-referenced by 1.704. And it makes perfect sense— Well, 704B makes a reference to 1.111 and 1.113. C? It does not, Your Honor, but it does— So then it's not cross-referenced in Rule 704. Well, 704 cross-references to 703, and 703 in turn cross-references to 111 and 113. There is a peculiarity when it comes to 703, which is about trying to calculate examination delay, and then Rule 704, which is to calculate applicant delay, that 703 chooses to be very specific about what it means by replies, and there are different kinds of replies, and then this is what you have to do in different contexts for different replies. And yet there isn't anything like that in 704B. And so there's a possibility of an inference there that when it comes to 704B and calculating applicant delay, the PTO is agnostic and doesn't care about replies in the context of whether it's a non-final or a final office action. So what am I supposed to do with that? Well, I think I would disagree with Your Honor's suggestion that the PTO doesn't care about expanding upon the definition of reply in 704 for a couple different reasons. I think first, by having 704 cross-referenced to 703, there is an economy of not having to repeat the exact same cross-references and definitions from other regulations and having to import them into other regulations that might want to rely on those same definitions. Do you see that cross-reference to 703 and 704 as being something of a suggestion where the PTO is trying to borrow from all the language and discussion and vocabulary in 703 and insert that into 704? That's not how I read the cross-reference. Well, I think that there's at least a fair inference, however, that the terms reply as it's being used in 704, 703, 111, and 113 should at the very least be read in parimateria. And to get to Your Honor's question to the appellant in this case as to what other definition of reply there might be, the appellant, notably, has been unable to point to any other regulation or statute or case law that defines reply in any other way. And in fact, the appellant's counsel just now admitted that a reply would have to at the very least comply with 111 and 116, but noticeably leaves out 113. But 113 is exactly the regulation that describes what a reply must do when it's submitted in response to a final office action. Let me see if I understand the government's view. Let's have a hypothetical here. There's a final office action, and then four months after the final office action, the applicant files an appeal, notice of appeal. Then the PTO would say there's been one month of applicant delay there. Is that right? Yes, Your Honor. I believe that there would be applicant delay for that one. And that's because the reply to the final office action was this notice of appeal, which under 1.113 is sufficient to be a compliant reply. Yes, Your Honor. I think that that would be correct. All right, so what if instead it was an RCE filing? An RCE filing that was filed four months after the fact? Yes, after the final office action. Would that be a reply to the final office action? Does that term reply is used in 704B? I don't believe so, Your Honor, because I don't think that – well – So then the clock would keep ticking on applicant delay beyond 30 days? I think that – well, I don't think that that's exactly right, Your Honor. I think that there would be the applicant delay for that period after the three-month mark to the beginning of the RCE. But I think that we would – essentially, by filing the RCE, the finality of the prior final office action is set aside, and then we go into a second phase of the continued examination. And so we are – so the continued back and forth between the examiner and the applicant, then we'll look to different obligations for the applicant in responding to various office actions. And we don't have the same concerns here. How do I understand, then, the rule of 704B, which says, you know, we're going to calculate applicant delay from three months after the final office action to the date where the applicant files reply to any action? And you're telling me an RCE filing is not a quote-unquote reply, so then there's nothing that's triggering the cutoff of applicant delay. Do you see my question? I see your question, Your Honor, and I think that – My understanding is you want us to say that a reply to a final office action, as the term replies use in 704B, is a notice of appeal or cancellation of any of the claims that you don't actually – that are rejected that you choose not to appeal. That's right. That's 1.113C. That's right, Your Honor. But then there's other things, like an RCE, for example. And so I don't know what the rule is right now telling us about in 704B as to what do we do with calculating applicant delay for an RCE if an RCE technically isn't a quote-unquote reply, as that term is used in 704B. Well, I think under that scenario, because the filing of the RCE removes the finality of the prior final office action, then we do go into a different phase where the back-and-forth – the filing of the RCE does cut off the assessment of the applicant delay for the first part, for the assessment with respect to the prior final office action. But then we are in a – Could it be that the RCE obviates any need to file a quote-unquote reply to a final office action because the finality has been withdrawn? It's like some kind of superseding event? Well, Your Honor, I think actually under the regulations, an RCE would be considered a type of reply that would cut off the calculation of applicant delay. I think I'm maybe getting a little bit spun around here. You're pivoting, that's for sure. It cuts off the accumulation of B delay. That's true. That's right, Your Honor. And it would also constitute a reply that would cut off the assessment of applicant delay as well. And so the – Because it's a reply? Is that term used in 704B? Yes, Your Honor, it would be. So that when the filing of the RCE occurs – Okay, so a reply under 704B is not in response to a final office action. It isn't merely a 1.113C reply? It's also an RCE filing is a reply? Excuse me a moment, Your Honor. Yes, Your Honor, I think that 1.113 does actually refer to 1.114, which governs the filing of an RCE. And so by filing an RCE, it would actually comply with 1.113 and therefore be a compliant reply in response to a final office action and therefore cut off the assessment of applicant delay. The reference to RCE in 1.113 isn't in 1.113C though, right? It's in B. It's in A, Your Honor. And A. That's right, Your Honor. And so, but I think that the inference that can be drawn from 1.113 as a whole is that the filing of an RCE would still cut off the calculation of applicant delay. But I also think that that is not what this court has to decide in this case because there's no question that intracellular's submission on July 17, 2013 was not a request for continued examination. There's no dispute over that. That's true. But this case may require us to try to explain what is a reply, what is an adequate reply, what is a compliant reply, what is the right conception of replies. That term is used in 704B in the context of a final office action response. And so we've got to get to the bottom of this. And that takes me to the other question, which is why is it a 116 amendment after final that puts the case in condition for allowance, a so-called adequate reply under 704B, which you're telling me is supposed to be a 113C type of reply, but a 116 amendment that puts something in condition for allowance. That doesn't fit within the text of 113C. Am I missing something? 113C just says file a notice of appeal or you cancel claims. Those are two different things that you can do in combination with each other to comply with 113C. The agency has an additional thing that it wants to tell me is adequate to satisfy 113C. When you file a 116 amendment or submission that somehow puts the case in condition for allowance and triggers a notice of allowance. So none of that is in 113C. So why is that deemed in the PTO's view to be a compliant reply as the word reply is used in 704B when we're talking about the context of a final office action? Well, I think that 113C still requires that a reply to a final rejection or action must still comply with any requirements or objections as to form and that when you take that in combination with the fact that there must be cancellation. Did you just read something from Rule 113C? Yes, Your Honor. That's from 113C. That if any claim stands allowed, the reply to a final rejection or action must comply with any requirements or objections as to form and that taken together as a whole still requires that it's still consistent with those regulations that for a reply to a final office action must still put an application in condition for allowance in order for it to be a valid reply. Okay. So you're relying on the second sentence of 113C? You want me to translate that as encompassing a 116B amendment? Well, I think that what our position is is that taken as a whole that 113C necessarily requires that a reply to a final office action has to place an application in condition for allowance and that that is consistent with 113C and consistent with 116 and that it's not an arbitrary and capricious decision to require that that responses to a final office action meet that kind of requirement. Otherwise, there would be no logical end to completing a patent prosecution and that we would be back in the pre-final office action scenario where there would continue to be this give and take between the applicant and the examiner. I guess it would help me if the regulations actually said all of this. If you file a reply to a final office action that puts the case in condition for allowance and triggers a notice of allowance, then that constitutes a sufficient reply to a final office action or perhaps obviates any need for a reply to a final office action. And so, therefore, you're kind of off the hook at that point in terms of needing to file a reply. Your Honor, I see that my time is up if I may answer your question. Well, I think that while in an ideal scenario, we would have regulations in every situation that would specifically address every single scenario that comes up, that's not the reality of how cases come before any sort of court in terms of trying to apply regulations in this case. But I think that what we have here are a set of regulations that, taken as a whole, are consistent with the PTO's position here, that being that a reply to a final office action must place an application in condition for allowance and that the appellant has not been able to point to any other statute, regulation or case that either defines reply that would be in such a way that supports their position or to show that the PTO's position is somehow fundamentally inconsistent with the overall scheme that has been placed in the statute and the regulations.  We would ask that the district court's decision be affirmed. Your Honor, if I may, I have just a little time left. I'd like to say very quickly that I would submit that the scheme for after final practice set forth in 113 and 116 is just simply intended to ensure that they're, to be very clear to applicants that nothing they do in after final practice obviates the need to file a notice of appeal or get allowance or file an RCE within the statutory deadline. I would say specifically with respect to 705, as the court held, I'd again refer to the court's recent opinion in supernus, and I would say that the answer to the resolution of these issues, what is a reply, is in 35 U.S.C. 154, where it's simply, it's a reply is something which reasonably, is a reasonable effort to conclude prosecution of the application and that if there's a reasonable effort to conclude prosecution of the application, if there's a de facto reasonable effort to conclude prosecution, it would be contrary to the statute to reduce that period. Thank you.